**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**LATRELL ADAMS**                                                                    **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 5:08-CV-154-DCB-MTP**

**CHRISTOPHER EPPS, ET AL.**                                            **DEFENDANTS**

<u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the court on a Motion for Summary Judgment [114] filed by

Defendants, a Motion for Summary Judgment [119] filed by Plaintiff, a Motion [151] Objecting

to Affidavits Submitted with Defendants' Motion for Summary Judgment, filed by Plaintiff, and

a Motion to Strike [157] Plaintiff's Supplement to Response to Motion for Summary Judgment,

filed by Defendants.

Having reviewed the submissions of the parties, the entire record in this matter and the

applicable law, the undersigned recommends that Plaintiff's Motion [151] Objecting to

Affidavits Submitted with Defendants' Motion for Summary Judgment be denied, that

Defendants' Motion to Strike [157] Plaintiff's Supplement to Response to Motion for Summary

Judgment be denied as moot, that Defendants' Motion for Summary Judgment [114] be granted

in part and denied in part as set forth below, and that Plaintiff's Motion for Summary Judgment

[119] be denied.

FACTUAL BACKGROUND

In this lawsuit, filed *pro se* pursuant to 42 U.S.C. § 1983, Plaintiff has asserted claims

against Jacqueline Banks, Warden at Wilkinson County Correctional Facility in Woodville,

Mississippi ("WCCF"),[1] Sandra Jackson, Assistant Supervisor at WCCF, Bryan Shuckrow, a Licensed Practical Nurse at WCCF and Lawrence Walton, a Unit Manager at WCCF, for exposure to unreasonable levels of secondhand smoke ("environmental tobacco smoke" or "ETS") in the "W-Pod" at WCCF. Plaintiff claims that Defendants Walton, Banks and Jackson were aware that inmates were smoking outside of designated smoking areas, in violation of WCCF policy. Plaintiff also alleges that they were aware that his cellmates were smoking in his cell, but that they refused to move him to a cell with a non-smoker, and that Defendant Walton threatened to assault him when Plaintiff spoke to him about this.

In addition, Plaintiff asserts a claim of denial of adequate medical treatment - specifically, Plaintiff claims that he filled out several sick call requests regarding the secondhand smoke, complaining of coughing and nausea, and that Nurse Shuckrow denied him medical treatment. He claims that Defendants Banks and Jackson were made aware of the situation but failed to ensure that he received medical treatment.

As relief, Plaintiff seeks compensatory damages, as well as injunctive relief in the form of an order directing the Defendants to either move him to a non-smoking zone or create such a zone, and an order directing the Defendants to provide him with medical care. *See* Complaint at 4; Amended Complaint [51] at 1.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] Plaintiff is incarcerated at WCCF, having been convicted of burglary and attempted burglary in Lauderdale County, Mississippi. He is housed in the "W-Pod."

genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).  "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

   This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).   If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied.  *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must  "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."  *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

   There must, however, be adequate proof in the record showing a real controversy regarding material facts.  "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the

necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

ANALYSIS

Motions to Strike

On December 15, 2008, Defendants filed their Motion for Summary Judgment [114], to which Plaintiff responded [138] on December 29, 2008.  On January 6, 2009, Defendants filed a Rebuttal [144] and on January 8, 2009, without seeking leave of court, Plaintiff filed a Supplement [152] to his Response to Defendants' Motion for Summary Judgment, in which he seeks to submit additional evidence that he was exposed to unreasonably high levels of ETS. Defendants have moved to strike [157] the Supplement.  Plaintiff has not responded.

The court agrees with Defendants that the Supplement is not authorized by the Local Rules, nor did Plaintiff seek or receive leave from the court to file it.  Moreover, Plaintiff did not respond to the Motion to Strike and for that reason as well, this court may grant Defendants' motion as unopposed.  *See* Local Rule 7.2(C)(2).  However, as discussed *infra*, without taking into account the materials submitted by Plaintiff in the Supplement, the court finds that there is a genuine issue of material fact as to whether Plaintiff was exposed to unreasonably high levels of ETS.  Accordingly, the court recommends that Defendants' Motion to Strike [157] be denied as moot.

Plaintiff has also filed a Motion [151] Objecting to Affidavits Submitted with Defendants' Motion for Summary Judgment in which Plaintiff asks the court to strike the affidavits of Sandra Jackson, Janice Fountain and Jodie Bowman (Exhs. A, B & C to Defendants' Motion for Summary Judgment, respectively).

First, Plaintiff contends that Ms. Jackson's affidavit contains false information, based on

an earlier response by Ms. Jackson to an interrogatory.[2]  The court has already addressed this

issue in its June 23, 2009 Order [193], where the court found that Ms. Jackson's subsequent

affidavit "provided more details and clarification" regarding the issue and that there was "clearly

no intent to mislead" Plaintiff or the court.  The court now finds no basis to strike Ms. Jackson's

affidavit.

Plaintiff next argues Ms. Fountain's affidavit should be stricken because the handling of

his ARP (against Defendant Walton) violated the MDOC"s grievance procedures.[3]  Plaintiff does

not explain why this provides a basis for striking the affidavit.  Plaintiff clearly disagrees with

Defendants' argument that he failed to exhaust administrative remedies with respect to his claims

against Defendant Walton (to be discussed *infra*), but this does not have any bearing on whether

Ms. Fountain's affidavit should be stricken.  Accordingly, the court finds that Ms. Fountain's

affidavit should not be stricken.

Finally, Plaintiff takes issue with certain statements made in Ms. Bowman's affidavit

regarding Plaintiff's requests for medical treatment - specifically, her averments that:  1)

Plaintiff's September 14, 2007 request for medical treatment was not received by the medical

---

[2]According to Plaintiff, in response to Interrogatory No. 3, which asked whether Ms. Jackson had personally written any Rule Violation Reports (RVRs) to inmates for smoking at WCCF, Ms. Jackson stated: "Upon information and belief none of these defendants have personally written RVRs to inmates for violating the smoking policy."  *See* [139].  In support of Defendants' Motion for Summary Judgment, Ms. Jackson submitted an affidavit in which she stated that she had "on occasion caught inmates smoking outside the designated areas.  On each of these occasions I issued a Rule Violation Report to these inmates."  *See* Jackson Aff. (Exh. A to Defendants' Motion for Summary Judgment) ¶ 5.

[3] Ms. Fountain avers in her affidavit that Plaintiff did not complete the first step in the ARP with respect to his claims against Defendant Walton.  *See* Fountain Aff. (Exh. C to Defendants' Motion for Summary Judgment) ¶ 3.

department; and 2) Plaintiff did not re-submit a request for medical care after submitting one in improper form. Plaintiff points to other summary judgment evidence in the record that allegedly refutes these averments. Having reviewed the documents, the court does not find that there is a sufficient basis to strike Ms. Bowman's affidavit.

For the foregoing reasons, the court recommends that Plaintiff's Motion [151] Objecting to Affidavits Submitted with Defendants' Motion for Summary Judgment be denied.

<u>Claims Against Defendant Walton - Failure to Exhaust</u>

Defendants assert that Plaintiff's claims against Defendant Walton should be dismissed because Plaintiff has failed to exhaust his administrative remedies.

Title 42 U.S.C. § 1997e(a) requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983. "[P]*roper* exhaustion of administrative remedies is necessary," meaning that a prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006) (emphasis added); *see also Johnson v. Ford*, 2008 WL 118365, at * 2 (5th Cir. Jan. 14, 2008) (stating that the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, 2008 WL 116333, at * 1 (5th Cir. Jan. 11, 2008) (under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules.") (citation omitted). As stated by the United States Supreme Court:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such

> an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction....

*Woodford*, 126 S.Ct. at 2388.

Miss. Code Ann. § 47-5-801 grants the MDOC the authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this statutory authority, the MDOC has set up an Administrative Remedy Program ("ARP") "through which an offender may seek formal review of a complaint relating to any aspect of their incarceration." *See* MDOC Inmate Handbook, Ch. VIII, § 3.[4] The ARP is a three step process. Inmates initially submit their grievance to the division head or adjudicator in writing, within thirty days after an incident has occurred. If, after screening, a grievance is accepted into the ARP, the request is forwarded to the appropriate official, who will issue a First Step Response. If the inmate is unsatisfied with this response, he may appeal to the Superintendent or Warden of the institution, who will then issue a Second Step Response. If still aggrieved, the inmate may appeal to the Commissioner of MDOC, where a Third Step Response is issued. At this time, the Administrator of the ARP will issue the inmate a certificate stating that he has completed the exhaustion of his administrative remedies and can now proceed to court. *See id.* at § 4; *see also Cannady v. Epps*, 2006 WL 1676141, at * 1 (S.D. Miss. June 15, 2006).

The record indicates that Plaintiff initiated the grievance procedure against Defendant Walton with a Request for Administrative Remedy dated July 10, 2008 (filed July 23, 2008). On

---

[4] Available at http://www.mdoc.state.ms.us/Inmate%20Handbook.htm (last accessed June 29, 2009).

July 21, 2008 - less than two weeks later[5] - Plaintiff filed a Motion to Amend [34] seeking to add Defendant Walton to the instant lawsuit.[6] Thus, Plaintiff commenced the instant lawsuit against Defendant Walton *prior* to completing the ARP process. Moreover, Plaintiff later moved to voluntarily dismiss his grievance on October 23, 2008 so that he could focus on pursuing an emergency ARP. *See* Fountain Aff. (Exh. C to Defendants' Motion for Summary Judgment) ¶ 3 & accompanying exhibits; *see also* Response [138] at 5-6.

Plaintiff does not dispute that he dismissed his grievance against Defendant Walton. He argues, however, that "the defendants processed his ARP in violation of MDOC grievance procedure" and, therefore, he did properly exhaust his claim.[7] *See* Rebuttal [163] at 5-6.

---

[5] Indeed, it was even earlier than that, as the undated motion is stamped "filed" on July 21, 2008, but it was presumably mailed by Plaintiff at least several days earlier.

[6] The motion was granted by Order [47] dated September 18, 2008.

[7] Plaintiff also argues that Defendants should not be allowed to assert failure to exhaust administrative remedies as a defense because they did not raise it in their answer. *See* Rebuttal [163] at 5-6; Plaintiff's Objections [148] to Defendants' Failure to Exhaust Administrative Remedy Defense. However, the court has reviewed the Defendants' Answer [15] and Amended Answer [16], which assert in the Tenth Defense "all defenses afforded under the Administrative Remedies Program." Moreover, although failure to raise an affirmative defense will generally result in waiver of that defense, "noncompliance can be excused if the defendant raises the issue at a 'pragmatically sufficient' time and there is no prejudice to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004) (citation omitted). Defendant Walton joined the lawsuit on September 18, 2008 and Defendants raised the issue of failure to exhaust (if not already raised in their Answer and Amended Answer) in their Motion for Summary Judgment, filed three months later on December 15, 2008. Plaintiff alleges that he is prejudiced because discovery is now closed and he cannot now acquire evidence to demonstrate that he did exhaust his administrative remedies. Plaintiff does not, however, identify what evidence he would have requested. Indeed, the court notes that subsequent to the filing of Defendants' Motion for Summary Judgment, Plaintiff has filed numerous motions (despite the expiration of the motions deadline), many of which request additional discovery. Plaintiff has not requested any additional discovery regarding his exhaustion of administrative remedies. Thus, the court finds Plaintiff's argument to be unconvincing.

Specifically, Plaintiff argues that his First Step should have been completed within 15 days pursuant to MDOC policy, but it was not, and that it then should have automatically gone to Step Two, but it did not.[8]  Plaintiff avers that he never received a response to his ARP.  *See* Response [138] at 5-6.  Although it does appear that Plaintiff's grievance was never processed beyond the First Step and, as Plaintiff points out, more than ninety days elapsed from when he filed his grievance to when he requested to voluntarily dismiss it, during which time the ARP process should have been completed,  the fact remains that he filed his claims against Defendant Walton prematurely.

Based on the foregoing, the court concludes that Plaintiff failed to exhaust administrative remedies with respect to his claims against Defendant Walton and, therefore, Defendant Walton is entitled to summary judgment.

ETS Claim

As an initial matter, the court points out that Section 1983 does not "create supervisory or *respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.").  "To state a cause of action under § 1983, the plaintiff must allege facts

---

[8] The MDOC Inmate Handbook, Ch. VIII, § IX.A. provides that "expiration of response time limits without receipt of a written response shall entitle the inmate to move on to the next step in the process."  Plaintiff neither alleges nor offers any evidence to demonstrate that he attempted to pursue this grievance beyond the First Step.  However, in response to Defendants' motion, Plaintiff has attached a copy of MDOC S.O.P. 20-08-01 "Grievance Procedures - Offender," which states that "[i]f the First Step Respondent has not responded to the grievance on or before the fifteen (15) day due date, *the Legal Claims Adjudicator* will process the grievance on to Step Two," and "[t]he offender will be provided official notice that such a grievance *automatically* went on to Step Two."  *See* [138-2] at 6 (emphasis added).

reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

In *Helling v. McKinney*, 509 U.S. 25, 35 (1993), the Supreme Court established a two-prong test to determine whether a claim for exposure to environmental tobacco smoke ("ETS") violates the Eighth Amendment. First, Plaintiff must show that he was exposed to unreasonably high levels of ETS. *Helling*, 509 U.S. at 35. Second, he must show that the prison officials acted with deliberate indifference to his situation. *Id.* This test involves both objective and subjective components. *Id.* With respect to the first prong, Plaintiff must objectively "show that he himself is being exposed to unreasonably high levels of ETS." *Id.* Establishing the objective factor "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Id.* at 36. "[S]poradic and fleeting exposure" to ETS does not constitute "unreasonably high levels," even if it is "unwelcome and unpleasant" and causes Plaintiff discomfort, such as nausea and coughing. *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36.

For the second prong, Plaintiff must show that the prison officials were subjectively

deliberately indifferent to his situation. *Id; see also Callicutt v. Anderson*, 2002 WL 31114947, at *1 (5th Cir. Sept. 11, 2002) (stating that in order to succeed on an Eighth Amendment claim, plaintiff must show that he is exposed to unreasonably high levels of ETS and that the prison officials demonstrated deliberate indifference to his situation). In order to demonstrate deliberate indifference, Plaintiff must show that Defendants acted with "obduracy and wantonness, not inadvertence or error in good faith." *Callicutt*, 2002 WL 31114947, at *2 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Courts should consider the following factors in evaluating deliberate indifference to ETS: "the adoption of a smoking policy; the administration of that policy; and 'the realities of prison administration.'" *Id.* (citing *Helling*, 509 U.S. at 36-37).

The Fifth Circuit recently issued two opinions, though unpublished, holding that fact issues precluded summary judgment in favor of defendants on the inmates' claims for exposure to excessive levels of ETS.[9] *See Murrell v. Chandler*, 2008 WL 1924198 (5th Cir. Apr. 10, 2008); *Murrell v. Casterline*, 2008 WL 822237 (5th Cir. March 25, 2008).[10] In *Chandler*, the Fifth Circuit reversed the district court's grant of summary judgment in favor of the defendants on prisoner's ETS claim. *Chandler*, 2008 WL 1924198, at *1. The court found that the prisoner's sworn affidavit included the following competent summary judgment evidence:

---

[9] The Fifth Circuit also recently issued an unpublished opinion vacating the decision by the U.S. District Court for the Northern District of Mississippi dismissing an inmate's ETS claim pursuant to 28 U.S.C. § 1915(e). *See Marcus v. Epps,* 2008 WL 2048331 (5th Cir. May 14, 2008). In *Marcus*, the plaintiff alleged he was exposed to ETS, he was injured as a result of the exposure, and that the defendants knew of and disregarded this risk to his health. *Id.* at *1. The Fifth Circuit held: "Although inartful, [plaintiff's] complaint does not fail to allege sufficient facts to state a facially plausible claim for relief at this juncture, although the ultimate viability of [his] claim is dubious." *Id.*

[10] These cases involve the same plaintiff, Getzell Johnson Murrell, relating to claims of ETS exposure while he was incarcerated in two different prisons.

he was assigned to a non-smoking unit but smokers were housed at the same unit; he was exposed to excessive levels of ETS 12 to 24 hours a day in his housing unit and at the factory where he worked; the smoke was often so thick in his housing unit that he had to hold a wet towel over his face to breathe; he advised the defendants that the no smoking policy was not being enforced and that he was having serious health problems that included migraine headaches and respiratory problems.

*Id*. at *2.  The court held:  "This evidence creates genuine issues of material fact regarding whether Murrell objectively proved that he was exposed to unreasonably high levels of ETS and whether the defendants were subjectively deliberately indifferent to his plight."

*Id*.

Likewise, in *Casterline*, the Fifth Circuit vacated the district court's grant of summary judgment in favor of the defendants on the prisoner's ETS claim.  *Casterline*, 2008 WL 822237, at *1.  The magistrate judge in the underlying case took judicial notice of the June 2006 Surgeon General's report concluding that there is no safe level of exposure to secondhand smoke, and concluded that the plaintiff met the first prong of *Helling*; defendants did not appeal this holding.  *Id.*  In concluding that the district court erred in holding that the plaintiff failed to meet the second prong of the *Helling* test, the Fifth Circuit held that the plaintiff established genuine issues of material fact as to whether the defendants were subjectively deliberately indifferent to his situation.  *Id.* at *2.  In its holding, the Fifth Circuit relied on evidence presented by the plaintiff that the defendants knew that he was allergic to ETS, that he specifically asked the defendants to enforce the no-smoking policy, and that the defendants failed to enforce the policy.  *Id.*  The court also considered sworn statements of other inmates submitted by the plaintiff indicating that defendants did not enforce the policy.  *Id.*

In the instant case, Plaintiff alleges that he is housed at WCCF with inmates who smoke

four packs of cigarettes a day, and that outside of his cell are 35 inmates who "smoke anywhere they want." *See* Complaint at 4. In response to Defendants' Motion for Summary Judgment, Plaintiff has submitted a sworn affidavit from his cellmate Brian Peeks, who avers that from June 2008 to the present (the affidavit is dated September 23, 2008) he has smoked approximately two packs of cigarettes a day in their cell, despite Plaintiff's "protestations." Mr. Peeks states that he and Plaintiff spoke with Defendant Walton and requested that he (Mr. Peeks) be placed in a cell with a smoker because Plaintiff did not smoke and was allergic to secondhand smoke. Defendant Walton denied their request and, according to Mr. Peeks, threatened Petitioner. Mr. Peeks further states that the smoking policy is not enforced in the W-Pod at WCCF, that inmates smoke "wherever they want," and "[t]here are at least 40 inmates who smoke constantly in all areas of our pod." *See* Peeks Affidavit [138-2].

Plaintiff also submitted a sworn affidavit from Kendrick Jones, another former cellmate of his (prior to June 15, 2008)[11] who avers that he smoked four to five packs of cigarettes a day in their cell, and that he observed Plaintiff's allergic reactions to secondhand smoke. Mr. Jones states that he has observed Plaintiff "having to stay covered up under blankets and sheets because his allergic reactions to second hand smoke was [sic] so severe." Mr. Jones avers that corrections officers do not enforce the smoking policy in the W-Pod at WCCF. Finally, he states that he and Mr. Adams made verbal and written requests to Defendants Banks and Jackson for Plaintiff to be put in a cell with a non-smoker because of Plaintiff's allergies to secondhand smoke. *See* Jones Aff. [138-2].

---

[11] Apparently, after Mr. Jones moved out of Plaintiff's cell, Mr. Peeks was moved in by Defendant Walton. *See* [34] (Amended Complaint).

Based on the record before the court and the recent holdings by the Fifth Circuit, the undersigned concludes that genuine issues of material fact exist as to whether Plaintiff has objectively demonstrated "that he himself is being exposed to unreasonably high levels of ETS." *Helling*, 509 U.S. at 35; *see also Wilson v. Stalder*, 1995 WL 696718, at *4 (5th Cir. Oct. 19, 1995) (reversing district court's grant of summary judgment in favor of defendants on plaintiff's ETS claim based on existence of genuine issues of material fact); *Atkinson v. Taylor*, 316 F.3d 257, 265 (3d Cir. 2003) (upholding denial of defendants' motion for summary judgment based on qualified immunity where, *inter alia*, Plaintiff offered evidence that he was subjected to continuous smoking for at least seven months).

Further, Plaintiff claims that as a result of his exposure to ETS, he has suffered from nausea, shortness of breath, headaches, chest pain and a decreased appetite, and that on November 24, 2008, he had a mild stroke or heart attack as a result of which the vision in his left eye is blurry, he has trouble walking, his left side is numb, and his back hurts severely. *See* Complaint at 3-4; Response [138] to Defendants' Motion for Summary Judgment at 3, 8. In addition, as discussed *supra*, Mr. Jones averred in his affidavit that Plaintiff was so allergic to secondhand smoke that he had to cover himself up with blankets and sheets in their cell. While the pleadings and summary judgment evidence do not establish that these conditions were caused by ETS, they do create a genuine issue of material fact, "although the ultimate viability of [Plaintiff's] claim is dubious." *Marcus*, 2008 WL 2048331, at * 1.

In support of their Motion for Summary Judgment, Defendants argue that the symptoms of which Plaintiff complains are not "serious medical needs" that would give rise to an Eighth Amendment claim. However, courts have held that similar symptoms and illnesses arising from

an inmate's exposure to ETS can constitute a serious medical condition. *See, e.g.*, *Atkinson*, 316 F.3d at 263, 260, 266-67 (finding that Plaintiff alleged a serious medical need based on nausea, inability to eat, headaches, chest pains, difficulty breathing, numbness in limbs, teary eyes, itching, burning skin, dizziness, sore throat, coughing and production of sputum, based on alleged exposure to ETS); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (holding that Plaintiff stated Eighth Amendment claim where he alleged exposure to ETS causing aggravation of chronic asthma); *Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995) (severe headaches, dizziness, nausea, vomiting and breathing difficulties stemming from ETS exposure constituted serious medical need). Moreover, the Eighth Amendment's proscription against deliberate indifference applies not only to current health problems, but also to the risk of future health problems. *See Helling*, 509 U.S. at 33-35; *see also Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citing *Helling*, 509 U.S. at 33-35) (stating that "an inmate may obtain injunctive relief under § 1983 based on exposure to environmental tobacco smoke in the absence of a present physical injury").

The court also finds that there are genuine issues of material fact as to whether Defendants were deliberately indifferent to Plaintiff's situation. As noted *supr*a, Plaintiff alleges that he is housed at WCCF with inmates who smoke four packs of cigarettes a day, and that outside of his cell are 35 inmates who "smoke anywhere they want." *See* Complaint at 4. Mr. Peeks averred in his affidavit that he smoked approximately two packs of cigarettes a day in his cell with Plaintiff; that the smoking policy is not enforced in the W-pod at WCCF and inmates smoke "wherever they want"; that "[t]here are at least 40 inmates who smoke constantly in all areas of our pod"; and that he and Plaintiff asked Defendant Walton to place him in a cell with a smoker, but

Defendant Walton refused and threatened Plaintiff. *See* Peeks Affidavit [138-2]. Mr. Jones averred in his affidavit that he smoked four to five packs of cigarettes a day in his cell with Plaintiff; that corrections officers do not enforce the smoking policy in the W-Pod at WCCF; and that he and Mr. Adams made verbal and written requests to Defendants Banks and Jackson for Plaintiff to be put in a cell with a non-smoker because of his allergies to secondhand smoke. *See* Jones Aff. [138-2].

Plaintiff argues that Defendants Banks and Jackson knew for some time prior to the filing of this lawsuit that he was housed in a cell with inmates who smoked in violation of the smoking policy, yet have done nothing to alleviate the situation. He argues that they were made aware of his situation during the ARP process. He also argues that Defendant Walton was aware of his situation because he personally complained to him when he requested a cell change, and commenced a grievance against him. *See* Response to Motion for Summary Judgment at 4-5; Rebuttal [163] at 1-2. Defendants appear to concede that they were made aware of Plaintiff's complaints "generally of exposure to second hand smoke," but argue that Plaintiff never put them on notice that his cellmates were smoking in their cell. *See* Rebuttal [144] at 2. They also argue that although Plaintiff may have requested a room change from Defendant Walton, he has not demonstrated that Walton was aware that his roommates were "openly violating the smoking policy in the shared cell." *Id.*

The record reflects that Plaintiff submitted a Request for Administrative Remedy, which was accepted by the Legal Claims Adjudicator on October 25, 2007. Dissatisfied with the First

Step response from Defendant Jackson,[12] Plaintiff then commenced the Second Step on November 19, 2007 by sending his ARP request to Warden Banks. Plaintiff described the physical symptoms he was experiencing as a result of being exposed to ETS, and stated: "Inmates will continue to smoke in their rooms because there is no way staff can moniter [sic] whether they do or not. The designated smoking area is as large as the whole common area, it is not enclosed, therefor [sic] there is no way to avoid being exposed to second hand smoke." *See* [163-2] at 19-20.[13]

With respect to Defendant Walton, Plaintiff commenced a grievance procedure against him on July 23, 2008, in which Plaintiff claimed that Walton had brought a new inmate into Plaintiff's cell - Mr. Peeks - who was "a heavy smoker who was going to smoke in the cell." In this grievance, Plaintiff avers that he told Walton he was allergic to secondhand smoke and requested that he not be in a cell with Mr. Peeks. According to Plaintiff, Defendant Walton yelled at him, told him to stop complaining about secondhand smoke and threatened to hit him. *See* [163-2] at 17.

In support of their motion, Defendants have submitted an affidavit from Defendant Sandra Jackson, currently Assistant Supervisor at WCCF, who was Unit Manager over the W-Pod at WCCF during the relevant time period. Ms. Jackson avers that smoking is only allowed in designated areas in the W-Pod at WCCF; that as Unit Manager over W-Pod she took numerous

---

[12] Defendant Jackson's response does not appear to be part of the record.

[13] On December 10, 2007, Warden Banks responded that she had investigated Plaintiff's claim, and considered the matter resolved, as based on the information she had received, inmates are not allowed to smoke outside designated smoking areas. *See* [163-2] at 1.

steps to enforce the smoking policy;[14] and that she has never ignored a violation of the smoking policy or allowed any such violation to go unpunished.[15]  Ms. Jackson states that she received a grievance from Plaintiff in November 2007 regarding his exposure to secondhand smoke, and that she investigated the grievance and found that, contrary to Plaintiff's allegations, the smoking policies in W-Pod were being enforced.  *See* Jackson Affidavit (Exh. A to Defendants' Motion for Summary Judgment).

In addition, Defendants have submitted an affidavit from Defendant Jacqueline Banks, Warden at WCCF, who avers that smoking in the W-Pod is restricted to certain designated areas, and that inmates are not allowed to smoke in their cells.  She claims that there are memos posted in the inmate housing units informing inmates about this policy, that under her supervision, staff members have taken measures to clearly identify the smoking areas, and that inmates who violate the smoking policies have received RVRs.  Warden Banks avers that she has never personally observed any violations of the smoking policy in the W-Pod, as alleged by Plaintiff in the instant lawsuit and in his grievance, which she investigated.  *See* Banks Affidavit (Exh. B to Defendants' Motion for Summary Judgment).

---

[14] Specifically, Ms. Jackson states that she: "helped supervise the installation of signs to clearly designate the areas of W-Pod where smoking is and is not permitted"; "often reminded the correctional officers over W-Pod that they should strictly enforce the smoking rules and discipline inmates for violating the smoking rules"; "would instruct new inmates coming onto W-Pod of the areas designated as smoking areas and instruct them to smoke only in the designated areas or they would be disciplined if they did not smoke in the appropriate areas"; and "would daily monitor W-Pod to ensure that the smoking policies were being followed."  *See* Jackson Aff. ¶ 4.

[15] Ms. Jackson states that on each occasion when she has caught inmates smoking outside of the designated smoking area, she has issued a Rule Violation Report.  *See* Jackson Aff. ¶ 5.

As discussed above, Plaintiff disputes these averments with sworn affidavits, as well as his sworn testimony. Based on the evidence before the court, the court finds that there are genuine issues of material fact as to whether Defendants acted with deliberate indifference to his situation in violation of the Eighth Amendment. *See Helling*, 509 U.S. at 35. Accordingly, Defendants' Motion for Summary Judgment on this basis should be denied.[16]

Denial of Medical Treatment Claim

As noted *supra*, Plaintiff alleges that on several occasions, Defendant Shukrow refused to provide him with medical care, and that Defendants Banks and Jackson failed to ensure that he received medical treatment after being made aware of his situation.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. Mar. 19, 2004), *cert. denied*, 543 U.S. 864 (2004), (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Fifth Circuit has noted that deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may not be held liable under this standard pursuant to Section 1983 unless the Plaintiff alleges facts which, if

---

[16]Plaintiff should understand that this recommendation does not reflect any opinion of this court that his claims will or will not ultimately be determined to be meritorious. Rather, in reaching this conclusion, the undersigned merely concludes that genuine issues of material fact exist as to Plaintiff's claims.

true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* at 838.

To successfully make out a showing of deliberate indifference, Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983." *Id.* (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)). The plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Additionally, a prisoner's mere "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

The record before the court shows that on September 14, 2007, Plaintiff submitted a Sick Call Request Form stating that he needed to see a doctor immediately because he was experiencing coughing, chest pains, nausea, dizziness, difficulty breathing and "intolerable discomfort" due to exposure to secondhand smoke. *See* Exh. CA to Plaintiff's Response [138] to Defendants' Motion for Summary Judgment. Plaintiff did not receive a response[17] and on

---

[17] Nurse Shukrow's written response indicates that he had not received Plaintiff's sick call request. However, the request form itself has a stamp indicating that it was received by the medical department on September 16. *See* Exhs. E & CA to Plaintiff's Response; *see also* Affidavit of Jodie Bowman (Exh. D to Defendants' Motion for Summary Judgment).

September 24, 2007, Plaintiff submitted another Sick Call Request Form. The response from Shuckrow was that this was not a medical issue and that he should speak with his Unit Manager. *See* Exh. B to Plaintiff's Response. On August 1, 2007, Plaintiff submitted another Sick Call Request Form, again complaining of chest pains, headaches, nausea, dizziness, breathing problems, coughing and vomiting and requesting that he see a doctor and be moved to a non-smoking zone. The form indicates that Plaintiff did not show up for his appointment on August 14, 2007.[18] *See* ecf. doc. no. 179-5. On October 23, 2007, Plaintiff submitted another Sick Call Request Form. *See* Exh. CB to Plaintiff's Response. It is unclear from the record whether Plaintiff received a response to this request or received any medical treatment. Plaintiff alleges that he has not.

Based on the foregoing, the court finds that there are genuine issues of material fact and that it cannot conclude as a matter of law that Defendant Shuckrow was not deliberately indifferent to Plaintiff's medical needs.[19] Accordingly, Defendants's Motion for Summary Judgment on this basis should be denied.

As for Defendants Banks and Jackson, Plaintiff alleges that they were made aware of his need for medical attention through the ARP process, but that they failed to do anything. As noted

---

[18] Plaintiff also submitted a Sick Call Request Form on April 12, 2008, after the commencement of this lawsuit, complaining of similar symptoms. The Form indicates - and Nurse Bowman avers - that he was a "no show" for medical services. *See* ecf. doc. no. 116 at 4; Bowman Aff. ¶ 4.

[19] Nor can the court conclude as a matter of law that Defendant Shuckrow *was* deliberately indifferent to Plaintiff's medical needs, as Plaintiff contends in his Motion for Summary Judgment [119]. Accordingly, the court recommends that Plaintiff's Motion for Summary Judgment be denied.

above, it is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver,* 276 F.3d at 742 & n.6; *see also Thompkins*, 828 F.2d at 304. Thus, supervisory prison officials such as Defendants Banks and Jackson may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

The court concludes that Defendants Banks and Jackson were not personally involved in denying Plaintiff medical care. These Defendants are neither nurses, doctors, or other health aides; rather, they hold supervisory positions and were not personally involved in Plaintiff's medical treatment. Accordingly, they cannot be liable for the alleged denial of medical treatment. *See*, *e.g.*, *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor to treat his shoulder injury"); *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (holding that the failure of the non-doctor defendants– Warden and Health Services Administrator– to intervene in the medical treatment of an inmate was not objectively unreasonable, even if it were wrongful).

Indeed, the only basis for Plaintiff's medical claim against Defendants Banks and Jackson appears to be that they denied plaintiff relief through the ARP. This is not a sufficient basis for imposing liability under Section 1983. *See Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (holding that prison supervisory officials "reasonab[ly] discharge[d]...their duty to protect the inmates in their care" where they "responded to [plaintiff's] complaints by referring the matter for further investigation or taking similar administrative steps."); *Poullard v. Blanco*, 2006 WL

1675218, at * 5 (W.D. La. June 9, 2006) (dismissing claim of failure to provide adequate medical care against supervisory officials who "acted consistent with their roles in the prison administration by addressing plaintiff's grievance or referring him to an avenue by which he might obtain relief"); *Mosley v. Thornton*, 2005 WL 1645781, at * 5 (E.D. La. June 20, 2005) ("Plaintiff merely alleges that the Warden was responsible for Thornton and the medical department and that he responded to plaintiff's appeal...However, the fact that the Sheriff responded to plaintiff's appeal is insufficient to support a constitutional claim against the Sheriff."); *Jones v. Livingston*, 2005 WL 3618316, at * 3 (S.D. Tex. Jan. 6, 2005) (holding that failure to provide adequate medical care claim asserted against supervisory prison official should be dismissed because "the fact that he did not respond to, or denied, plaintiff's grievances does not, alone, state a claim..."); *Anderson v. Pratt*, 2002 WL 1159980, at * 3 (N.D. Tex. May 29, 2002) (Warden's review and denial of grievance did not show personal involvement in deprivation of constitutional rights); *Alexander v. Fed'l Bureau of Prisons*, 227 F.Supp. 2d 657, 665-66 (E.D. Ky. 2002) (Warden's signing an administrative remedy response prepared by staff did not establish constitutional violation); *Lamkey v. Roth*, 1997 WL 89125, at * 5 (N.D. Ill. Feb. 26, 1997) (Warden's signing of grievance report "concurring in the grievance officer's finding" insufficient to establish personal involvement).

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that: (1) Plaintiff's Motion [151] Objecting to Affidavits Submitted with Defendants' Motion for Summary Judgment be denied; (2) Defendants' Motion to Strike [157] Plaintiff's Supplement to Response to Motion for Summary Judgment be denied as moot; (3) Plaintiff's Motion for Summary Judgment [119] be

denied; and (4) Defendants' Motion for Summary Judgment [114] be granted in part and denied in part as follows: that Plaintiff's claims against Defendant Walton be dismissed without prejudice for failure to exhaust administrative remedies; that Plaintiff's claims of denial of medical treatment against Defendants Jackson and Banks be dismissed with prejudice, but that Plaintiff's claim of denial of medical treatment against Defendant Shuckrow should not be dismissed; and that Plaintiff's claims based upon his alleged exposure to environmental tobacco smoke should not be dismissed.[20]

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

---

[20] The court will set Plaintiff's remaining claims for trial by separate Order, after this Report and Recommendation is considered and addressed as appropriate by the District Judge.

THIS, the 23rd day of July, 2009.

s/ Michael T. Parker
United States Magistrate Judge